IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KIA L. SWAIN,　　　　　　　　　　　　　　Case No. 3:14-cv-01960-AA
　　　　　　　　　　　　　　　　　　　　　　OPINION AND ORDER
　　　　Plaintiff,

　　v.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

　　　　Defendant.

---

Merrill Schneider
Schneider Kerr Law Offices
P.O. Box 14490
Portland, Oregon 97293
　　Attorney for plaintiff

Billy J. Williams
Acting United States Attorney
Ronald K. Silver
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

Leisa A. Wolf
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
　　Attorneys for defendant

AIKEN, Chief Judge:

Plaintiff Kia Swain brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI") under the Act. For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

On July 14, 2011, plaintiff applied for DIB and SSI, alleging disability as of January 31, 2011. Tr. 17. On October 3, 2011, plaintiff's application was denied initially and on December 15, 2011, was denied upon reconsideration. Id. On May 15, 2013, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified. On May 30, 2013, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 14. On October 2, 2014, the Appeals Council denied her request for review. Plaintiff then filed a complaint in this Court.

## STATEMENT OF FACTS

Born on January 6, 1975, plaintiff was thirty-eight years old at the time of the hearing. Tr. 214. Plaintiff has completed one year of college and certified nurse assistant training. Tr. 315. She was previously employed as an educational assistant and certified nurse's assistant. Tr. 47. Plaintiff alleges disability due to depression, a panic disorder with agoraphobia, fibromyalgia,

an ankle fracture, obesity and insomnia. Tr. 19, 630. The ALJ determined that plaintiff has met the insured status requirement of the Act through December 31, 2013. Tr. 19.

## THE ALJ'S FINDINGS

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v.

Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1502. At step one, the ALJ determined that plaintiff had not engaged in "substantial gainful activity" during the period of alleged disability. Tr. 19; Yuckert, 482 U.S. at 140; 20 C.F.R. § 404.1520(b).

At step two, the ALJ found that plaintiff has a "medically severe impairment or combination of impairments," including depression, a panic disorder with agoraphobia, fibromyalgia, an ankle fracture, and alcohol abuse in partial remission. Tr. 19; Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520©.

At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Tr. 19; Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d).

The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform a range of light work:

> [she] is limited to standing and walking for about two of eight workday hours; she should not work at unprotected heights or around hazardous machinery. She is limited to unskilled work requiring no interaction with the public. She would work better in a structured setting where sudden change in demand is minimal. Tr. 21.

At step four, the ALJ found that plaintiff could not perform her "past relevant work." Tr. 24-25; 20 C.F.R. § 404.1520(f).

At step five, the ALJ found that plaintiff could perform other work that exists in significant numbers in the national and local economy, including electronics worker, hand packager, and small parts assembler. Tr. 25-26; Yuckert, 482 U.S. at 141-42; 20 C.F.R.

Page 4 - OPINION AND ORDER

§ 404.1520(g). The ALJ therefore concluded that plaintiff was not disabled under the Act. Tr. 26.

**DISCUSSION**

Plaintiff argues that the ALJ erred by: (1) finding her not fully credible and (2) improperly assessing the medical opinion evidence from doctors John Robinson, Ph.D. and Amanda Ragonesi, Psy.D.

I. <u>Plaintiff's Credibility</u>

Plaintiff contends that the ALJ failed to articulate a clear and convincing reason, supported by substantial evidence, for rejecting her subjective symptom statements concerning the extent and severity of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." <u>Orteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's

credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that the last time she worked was in 2011, after she left the medical field, because "[i]t's very stressful on your body and mental capacity." Tr. 38. Although plaintiff testified she went into the educational field to work with children as an educational assistant, she noted she was let go from that job because of absences due a mental health issue. <u>Id.</u> Plaintiff also testified that in 2011, a car rolled over her left ankle and that she is still recovering from that injury. Tr. 39. She stated that she cannot walk too much on her ankle or sit too long, because it "puffs up." <u>Id.</u> She said she had to wear a black boot with an ankle stabilizer. <u>Id.</u> Despite being in the boot for almost a year and stating that her ankle is still recovering, plaintiff clarified that she did not need surgery on her left ankle. <u>Id.</u>

Plaintiff further testified that she has been hospitalized for her mental health condition, but not for more than a day. Tr. 44. She stated her current treatment includes seeing a psychiatrist, a therapist, and a neuropsychologist. <u>Id.</u> "[I] have a lot of things going on in my mind and so [my psychiatrist] wanted me to also see a, a therapist who I can see more often to talk things through." <u>Id.</u> Plaintiff also endorsed problems with panic attacks: "Oh, recently, being that what's going on in my life, I've been having

them at least two to three times a month." Tr. 45. In response to subsequent questions from the ALJ, plaintiff clarified that one of the medications she takes daily, Seroquel, keeps the panic attacks away. Tr. 46. Further, she testified that "I like to be out. I love to take care of people. That's why I went into nursing and helping little kids. I could – I'm angry with my body, because in my mind, because it's just not what it used to be." Id. Plaintiff also stated that "[I] get scared all the time that my husband's going to leave me because I'm not the woman that he married. And I want to get better and I want these doctors to help me – and help me get better." Id.

After summarizing plaintiff's hearing testimony and the longitudinal record, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that her statements regarding the extent of these symptoms were not fully credible, due to her level of daily activity and inconsistencies in the medical evidence which contradicted the alleged severe impairments she endorsed. Tr. 21-22.

Notably, the ALJ determined that evidence of plaintiff's daily activities suggested a greater level of functioning than her alleged limitations. Tr. 21-22, 609, 623, 717, 778. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capabilities that are transferable to a work setting." Molina v.

Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012)(citations and internal punctuation omitted). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id. at 1113. In particular, plaintiff's doctor mentioned in her August 2010 treatment notes, that plaintiff stated she was doing okay and that "Brookside was awesome and [she] learned a lot. [She's] still getting together with two of the ladies she met there once a month." Tr. 633. Additionally, the ALJ found "that treatment notes detailed issues with family stress, including [plaintiff's] ongoing household responsibilities such as cleaning and cooking in light of her husband working 80 hours a week, leaving [plaintiff] to do all of the parenting at home for three children, ages 13, 9, and 3 in December of 2010." Tr. 21-22, 609, 623, 625, 632. Plaintiff's nine year old also requires extra care and attention due to anxiety and claims that he hears voices. Id. Lastly, the ALJ noted that on November 9, 2011, plaintiff denied problems with caring for her youngest child at home. Tr. 21-22, 717.

Further, the record reveals that on August 24, 2012, plaintiff stated that she cares for three children and does not have the time to be sick or sedentary. Tr. 22, 778. Moreover, the ALJ noted that plaintiff's earnings record shows very little earnings since 2008, prompting concern about whether plaintiff's failure to work in the past, as well as present, had more to do with the need or desire to stay at home and raise her children, rather than her inability to

Page 8 - OPINION AND ORDER

perform basic work-related activities; plaintiff said she was able to drive to her and her kids' appointments, clean her house and care for the needs of her three children. Tr. 22, 230-237. The ALJ noted that, "There is nothing wrong with this attitude and approach as it is a conscious lifestyle decision many people make, however, it diminishes the [plaintiff's] allegation of total disability greatly as it demonstrates abilities consistent with the capacity to perform at least basic work-related activities." Id. While variable interpretations of this evidence may exist, the ALJ's analysis was nonetheless reasonable, such that it must be upheld. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004).

The ALJ also found that the medical evidence did not substantiate plaintiff's allegations of her disabling limitations. Tr. 24. In particular, the ALJ noted that evidence throughout the record indicates overuse of medications, self-increasing dosages, not following the recommendations of her treatment providers, bargaining with medical providers, and shopping for medical providers as part of drug seeking behavior. Tr. 22, 533, 617-618, 623, 680, 746, 773, 780. Additionally, the ALJ noted that plaintiff frequently missed therapy appointments, with her providers questioning plaintiff's commitment to therapy. Tr. 22, 623, 682, 773, 775.

The ALJ also noted that from plaintiff's allegations and hearing testimony, plaintiff believes her primary limitations are mental given that her application for benefits emphasized her

claims of mania, panic attacks, and hallucinations. Tr. 21, 43. While she testified that she has agoraphobia and is scared all of the time, plaintiff failed to reference mania or hallucination symptoms during the hearing. Tr. 21, 46. Thus, the ALJ reasonably concluded that plaintiff's allegations were unsupported.

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. The ALJ's credibility finding is affirmed.

II. Medical Opinion Evidence

Plaintiff next argues that the ALJ did not properly incorporate the December 2011 opinion of state agency psychological consultant John Robinson, Ph.D., into plaintiff's RFC and that the ALJ should have given more weight to the September 2011 psychological assessment completed by Amanda Ragonesi, Psy.D.

There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so. Bayliss, 427 F.3d at 1216 (citing Lester, 81 F.3d at 830-31). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Id. An ALJ gives specific, legitimate reasons to discount contradicted opinions by providing a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

interpretation of the evidence, and making findings. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Further, "credibility determinations do bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and her diagnosed conditions." Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005).

A. Dr. Robinson's Opinion

In December 2011, Dr. Robinson performed a critical review of plaintiff's medical record. Tr. 23, 87-102, 104-119. In his report dated December 14, 2011, Dr. Robinson opined that plaintiff's mental health impairments resulted in moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Tr. 23, 115. Dr. Robinson also opined that given plaintiff's symptoms, she should be restricted to work tasks that require no more than performance of simple, routine tasks requiring no more than superficial public contact. Id. He also concluded that plaintiff would work better in a structured setting where sudden change in demand is minimal. Tr. 23, 116. Given that Dr. Robinson's opinion was consistent with the longitudinal record, the ALJ gave great weight to his opinion. Tr. 23.

Plaintiff nonetheless argues that the ALJ's RFC and step five finding are erroneous because they do not account for all of the functional limitations described in Dr. Robinson's report. Pl.'s Br. at 4-7.

Page 11 - OPINION AND ORDER

Specifically, plaintiff argues that the ALJ committed error by not including Dr. Robinson's language that plaintiff should have advance warning and time to adjust to required changes, and that she may have difficulty in regards to sustained work activity as part of plaintiff's RFC assessment. Pl.'s Br. at 5. Plaintiff further argues that testimony from a vocational expert that does not accurately reflect all of plaintiff's limitations does not constitute substantial evidence to support the ALJ's decision. Id.

In determining a claimant's RFC, the ALJ must consider limitations imposed by all of a plaintiff's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the plaintiff's testimony. SSR 96-8p, available at 1996 WL 374184.

The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

However, the ALJ is not required to use the exact language in his RFC determination as is used in the credited part of a medical opinion, so long as the noted limitations are consistent with the part of the opinion that is credited by the ALJ. See Turner v. Comm'r Soc. Sec. Admin., 613 F.3d 1217 (9th Cir. 2010)(affirming the ALJ's proper consideration of a medical opinion, because the

limitations used in the RFC were entirely consistent with Dr. Koogler's credited limitations). Additionally, the ALJ is not required to incorporate limitations phrased equivocally into the RFC. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 691-92 (9th Cir. 2009); see also Glosenger, 2014 WL 1513995 at *6 (affirming the ALJ's rejection of functional restrictions assessed by Dr. Stradinger because the doctor used "equivocal language ('might do better' and 'would also likely require')"). Here, the ALJ's RFC reflects the limitations found by Dr. Robinson, and I find no error.

Plaintiff also argues that the ALJ's RFC and step five finding are erroneous because "unskilled work" in the RFC does not properly account for Dr. Robinson's opinion about plaintiff's mental limitations. Pl.'s Br. at 6-7. Plaintiff argues specifically that Dr. Robinson's statements are equivalent to a restriction to simple one-and-two-step instructions, which fall under Reasoning Level 1. Id. Plaintiff claims error in the Step Five determination, because the jobs the VE testified that plaintiff is still able to perform fall under Reasoning Level 2. Id.

The ALJ found that plaintiff retained the RFC to perform unskilled light work requiring no interaction with the public and that she would work better in a structured setting where sudden change in demand is minimal. Tr. 21. At step five, based on VE testimony, the ALJ found that plaintiff retained the ability to perform work existing in significant numbers in the national economy, including an electronics worker, a hand packager, and a

Page 13 - OPINION AND ORDER

small parts assembler. Tr. 25-26. Plaintiff acknowledges that all three positions identified by the VE are reasoning level two positions. Pl's. Br. at 7.

Plaintiff next argues the DOT requirements for the jobs identified by the VE exceed her RFC because she is limited to unskilled work in a structured setting with minimal changes in demand. Plaintiff asserts that jobs identified by the VE have a Reasoning Level 2, defined as the ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT, Appx. C, § III. Plaintiff contends that jobs requiring this level of reasoning are beyond her RFC.

Defendant responds that the jobs identified each have a specific vocational preparation (SVP) of 2, which corresponds with unskilled work, i.e., work that "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). Thus, defendant contends that the VE testimony does not conflict with the DOT classifications.

Regardless, this court and the Ninth Circuit have found that a "reasoning level 2 is generally consistent with the ability to perform simple, routine tasks." Delatorre v. Colvin, 2013 WL 6284389, at *6 (D. Or. Dec 3, 2014); see also Lara v. Astrue, 305 Fed. Appx. 324, 326 (9th Cir. 2008). As such, the ALJ properly accounted for all of the functional limitations described in Dr. Robinson's report when determining plaintiff's RFC. Therefore, the jobs identified at step five are consistent with unskilled work.

Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005); Stubbs-Danielson, 539 F.3d at 1175-76. The ALJ's RFC is upheld.

B.  Dr. Ragonesi's Opinion

On September 21, 2011, Dr. Ragonesi completed a psychological evaluation of plaintiff and diagnosed her with bipolar II disorder, panic disorder with agoraphobia, alcohol dependence in sustained full remission, and rendered a GAF score of 45. Tr. 24, 672-676. Dr. Ragonesi opined that at present, it is unlikely plaintiff would be able to function appropriately in a typical work setting because symptoms of impulsivity, autonomic arousal, and depression are likely to interfere with her ability to exercise judgment and learn work-related tasks. Id.

The ALJ extensively evaluated the medical evidence of the entire record, including the specific opinion by Dr. Ragonesi, and ultimately found that this "opinion relies heavily on subjective reports of symptoms and limitations provided by [plaintiff] and the opinion is without substantial support from other evidence of [the] record, which renders it less persuasive." Tr. 24.

It is well-established that "evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (internal quotations marks omitted). "[A]n opinion of disability premised to a large extent upon the

claimant's own accounts of [her] symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted." Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995); see also Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (claimant's provision of misinformation, unbeknownst to a doctor, served as a legally sufficient reason for rejecting that doctor's opinion). see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (affirming the rejection of a treating source's opinion that "relied only on [the claimant's] subjective complaints"); see also Bray, 554 F.3d at 1228. Moreover, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

The ALJ gave reduced weight to the mental functional assessment of Dr. Ragonesi because it relied heavily on plaintiff's subjective complaints. For instance, treatment notes from January 5, 2012, detail a GAF assessment of 60, which was indicative of moderate limitations. Tr. 745. Additionally, treatment notes from November 26, 2012, also detail a GAF assessment of 60. Tr. 785. The ALJ found that these GAF scores "were assigned by treatment providers who have had regular contact with the claimant, and therefore are found to be more reliable than the one-time assessment of Dr. Ragonesi." Tr. 24. Accordingly, the ALJ reasonably disregarded Dr. Ragonesi's opinion to the extent it was premised on plaintiff's self-reports. Further, the ALJ rationally

Page 16 - OPINION AND ORDER

found that Dr. Ragonesi's opinion conflicted with other medical evidence in the record as detailed above. Thus, the ALJ's evaluation of Dr. Ragonesi's opinion is therefore affirmed.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this 11th day of December, 2015.

_____
Ann Aiken
United States District Judge